**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| HAYTHAM TAHIR,<br><br>Petitioner,<br><br>v.<br><br>DAVID VENTURELLA, *et al.*,<br><br>Respondents. | ) | 3:26-cv-01966 |

**MEMORANDUM ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

Pending before the Court is the Petitioner's Petition for Writ of Habeas Corpus. (ECF No. 1). The Petitioner, a citizen of Sudan, is currently being held in El Paso, Texas but was detained at Moshannon Valley Processing Center in Philipsburg, PA at the time of the filing of this Petition. (ECF Nos. 1, at 1 (Moshannon); 7, at 1(Texas). The Petitioner was admitted to the United States on November 29, 2022 on a tourist visa with authorization to remain in the United States until May 28, 2023. *Id*. On June 15, 2023, the Petitioner filed an application for Temporary Protected Status ("TPS") with United States Citizenship and Immigration Services ("USCIS"). (ECF No. 1, at ¶ 58). On January 9, 2024, Petitioner also filed an asylum application with USCIS. (ECF No. 1 at ¶ 62.3). Both applications remain pending with USCIS. *Id.*

On January 8, 2025, local law enforcement in New York arrested Petitioner, and the District Attorney's Office subsequently charged him with sexual abuse in the first degree: forcible compulsion in violation of PL 130.65; Forcible touching-intimate parts in violation of PL 130.52; and sexual abuse in the third degree in violation of PL 130.55. (*See* ECF No. 7-2). Petitioner was arraigned on these charges and pleaded not guilty. *Id.*

On July 6, 2026, while the Petitioner was attending an asylum interview, Immigration Officers arrested Petitioner pursuant to a warrant. (ECF No. 7-3). That same day, Immigration Officers issued Petitioner a Notice to Appear and placed him in removal proceedings. (ECF No. 7-4). The Notice to Appear charged Petitioner with removability for remaining in the United States for longer than permitted in violation of 8 U.S.C. § 1227(a)(1)(B). *Id*. The Petitioner received a custody determination hearing before an Immigration Judge on August 25, 2026. (ECF No. 7-6).

The Petitioner's Petition for Writ of Habeas Corpus was filed with this Court on October 8, 2026. (ECF No. 1). In it, he argues that (1) he was arrested pursuant to an invalid warrant and without an individualized custody determination; (2) the bond hearing he received was unconstitutionally defective; and (3) his pending eligibility for TPS protections invalidate his detention pursuant to § 1226(a). This Court issued a Show Cause Order on October 16, 2026. (ECF No. 4). The Respondents filed a Response on to the Show Cause Order on October 30, 2026. (ECF No. 7). The Petitioner then filed a Reply on November 9, 2026. (ECF No. 8). The Petition is therefore now ripe for disposition.

## I. Jurisdiction

This Court has jurisdiction to consider the constitutionality of the Petitioner's detainment pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 2241. *See generally Buele Morocho v. Warden Philadelphia FDC*, 189 F.4th 287 (3d Cir. 2026). However, at this time, based on the record before it, this Court does not have the jurisdiction to consider whether the Petitioner is subject to removal based on his TPS application. 8 U.S.C. § 1252(b)(9). *See also Khalil v. President, United States*, 164 F.4th 259, 273 (3d Cir. 2026). This is important to note because the Petitioner repeatedly grounds his claims for relief in the belief that his TPS application invalidates his removal proceedings. (*See e.g.*, ECF No. 1, at ¶ 89 ("Petitioner will not be removed from the United States

while his TPS application remains pending.”)). Due to such jurisdictional limits, this Court does not consider the Petitioner’s removability arguments. 8 U.S.C. § 1252(b)(9).

## II. Arrest and Individualized Custody Determination[1]

The Petitioner first argues that his initial arrest violated § 1226(a) because the warrant his arrest is premised upon is facially invalid and because he did not receive an initial custody determination. (ECF No. 1, at 22-23). The Respondents argue that the warrant is valid, and that the Petitioner did receive an initial custody determination. (ECF No. 7, at 4-5, 7-9). Further the Respondents argue that this Court lacks jurisdiction to review the circumstances surrounding the Petitioner’s arrest. *Id*. The Respondents cite to *Khalil v. Trump*, which explains the circumstances in which 8 U.S.C. § 1252(b)(9) limits habeas claims for noncitizens challenging their removal. 164 F.4th 259 (3d Cir. 2026). Such claims, the Respondents argue, should be raised before an immigration judge, appealed to the Board of Immigration Appeals (“BIA”), and, through a Petition for Review, heard by the Court of Appeals. (ECF No. 7). The unlawful arrest claims are therefore “questions of law and fact, . . . arising from any action taken . . . to remove an alien from the United States” that may not be advanced in a district court habeas proceeding. 8 U.S.C. § 1252(b)(9). At least one other member of this Court has held that in the circumstances then before that Court that review of unlawful arrests “through a habeas petition is clearly prohibited by Khalil because [the arrests] arise from or are actions taken to remove an alien from the United States.” *Sissoko v. Oddo*, No. 3:26-cv-1081, 2026 WL 2349398, at *2 (W.D. Pa. Aug. 13, 2026).

More to the point here, even if the Court had jurisdiction to hear Petitioner’s unlawful arrest claim, it is not clear that it could order the relief requested. *See id.* at *3 (“The remedy for an

[1] The Court relies principally on its explanation of the relevant legal standard in a recent similarly situated case on this Court’s civil docket. *Singh v. Warden*, No. 3:26-cv-01993, ECF No. 8 (W.D. Pa. Nov. 6, 2026).

unlawful arrest is the suppression of evidence obtained therefrom, not release from custody."); *see also I.N.S. v. Lopez-Mendoza*, 468 U.S. 1032, 1039 (1984) ("The 'body' or identity of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest."). We also know that claims of unlawful arrest may be advanced by noncitizens through the petition for review process and are therefore channeled to that process through § 1252(b)(9). *See, e.g., Matos v. Att'y Gen. United States*, 757 F. App'x 214, 216 (3d Cir. 2018) (non-precedential) (analyzing warrantless ICE arrest and Fourth Amendment claim on petition for review); *Oliva-Ramos v. Att'y Gen. of the United States*, 694 F.3d 259, 274 (3d Cir. 2012) (reviewing Fourth Amendment claim on petition for review). Given these principles, and the relief ordered below, Court therefore concludes it should not and need not address more broadly the Petitioner's habeas claims that his allegedly unlawful arrest justifies release.

## III. The Constitutionality of the Bond Hearing

A district court is limited to reviewing "the adequacy of process" the petitioner received at his bond hearing and cannot second guess "any discretionary determinations underlying the IJ's bond decision[.]" *Quinteros v. Warden Pike Cnty. Corr. Facility*, 784 F. App'x 75, 78 (3d Cir. 2019) (unreported). A bond hearing complies with Due Process when "[a]n alien: (1) is entitled to factfinding based on a record produced before the decisionmaker and disclosed to him or her; (2) [is] allowed to make arguments on his or her own behalf; and (3) has the right to an individualized determination of his or her interests." *Id.* (quoting *Abdulai v. Ashcroft*, 239 F.3d 542, 549 (3d Cir. 2001)).

"A bond hearing is individualized 'if it is not so arbitrary that it would offend fundamental tenants of due process' and 'if there is a discernable rational basis for the underlying administrative decision, and the immigration judge applies the correct legal standards[.]'" *Zheng v. Rokosky*, 826

F. Supp. 3d 545, 556 (D.N.J. 2026) (quoting *Vasquez-Rosario v. Noem*, No. 25-7427, 2026 WL 395711, at *2 (E.D. Pa. Feb. 12, 2026)).

The Petitioner did receive a bond hearing on August 25, 2026. (ECF No. 7-6). At the bond hearing, the Petitioner was represented by counsel and the immigration judge was presented with and considered evidence such as that the Petitioner has been in the United States for at least four years, has family and community ties to the United States, and is a licensed architect. (*See generally* ECF No. 10). The Petitioner's counsel was afforded an opportunity to directly address the criminal charges pending before a New York court and explained that (1) his client rejected a plea deal due to a wish to prove his innocence; (2) that the criminal conduct in question occurred on New Years and may have involved inebriation; (3) that the New York charges are the only criminal allegations that he has ever had against him; (4) that there were potential issues involving the grand jury; (5) that it is unclear whether the alleged victim will testify in said case; (6) that the Petitioner's criminal attorney wrote a letter on his behalf; (7) and that multiple members of the community wrote letters on the Petitioner's behalf attesting to the Petitioner's good moral character. (ECF No. 10, at 5).

After hearing the evidence, the IJ denied bond upon a finding of dangerousness. (ECF Nos. 10, at 7-8; 7-6). To support this decision, the IJ asserted that the sexual abuse charges against the Petitioner are serious allegations and that it appears like the New York ADA is "prosecuting this quite vigorously." (ECF No. 10, at 8). The IJ expressly considered that the Petitioner's criminal attorney wrote a letter on his behalf and that there may have been issues concerning a grand jury but found that ultimately the Petitioner had not met his burden of proving that he was not a danger to the community. *Id.*

The Petitioner did receive a constitutionally adequate bond hearing. The IJ heard evidence from the Petitioner through counsel, considered both the positives and negatives in that evidence, and decided that Petitioner was a danger to the community while referencing the arguments made by Petitioner. *Compare Quinteros*, 784 F. App'x at 78 (finding bond hearing satisfied Due Process where petitioner was given opportunity to make arguments on their own behalf and the IJ issued "an assessment particular to" the details of the petitioner's case) *with Zheng*, 826 F. Supp. 3d at 558 (finding bond hearing was not constitutionally adequate where "IJ did not provide even a minimal articulation of the basis of her decision.").

The Petitioner is detained under 8 U.S.C. § 1226(a). (ECF No. 7, at 7). Under that statute and its implementing regulations he is entitled to a "prompt bond hearing." *Borbot, v. Warden Hudson Cnty. Corr. Facility*, 906 F.3d 274, 278 (3d Cir. 2018). The record reflects that an individualized custody determination has been made with respect to the Petitioner in this case. Once, pursuant to an arrest warrant and second by the IJ at a prompt bond hearing held on August 25, 2026. (ECF Nos. 7-3 (warrant); 7-6 (IJ bond determination). Petitioner has been provided the process he is entitled to.

AND NOW, this 25th day of November, 2026, IT IS HEREBY ORDERED that Petitioner's Petition for Writ of Habeas Corpus, (ECF No. 1), is DENIED.

The Clerk will close the case on the docket without prejudice, and the Court retains jurisdiction over the action and the parties pending further proceedings, as may be appropriate, including interpretation or enforcement of its Orders.

/s/ Mark R. Hornak
UNITED STATES DISTRICT JUDGE

Dated: November 25, 2026